UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
GONZALO PAVIA,

                                   Plaintiff,

                   - against -

AROUND THE CLOCK GROCERY, INC.,
et al,

                               Defendants.
-----------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

03 CV 6465 (ERK)

On December 29, 2003, Gonzalo Pavia filed this action, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., seeking damages from defendants Around the Clock Grocery, Inc. ("Around the Clock"), and S.S. Hussain, including unpaid minimum wages and unpaid overtime wages, resulting from defendants' violations of the FLSA. Despite proper service of the Summons and Complaint, defendants failed to file an Answer or otherwise respond to the pleadings. On April 22, 2004, the Clerk of Court entered a default as to both defendants and the matter was referred to the undersigned for the purpose of conducting an inquest and reporting on the issue of damages.

## FACTUAL BACKGROUND

On July 15, 2004, this Court held an inquest at which plaintiff Pavia testified[1] that from May 2001 through December 2002, he worked for defendant Around the Clock, a deli, located at

---

[1] Defendants, who have never appeared in this action, did not attend the inquest hearing and Mr. Pavia's testimony is thus undisputed.

1888 Victory Boulevard, Staten Island, New York. (Tr. at 5; Compl. ¶ 10).² According to Mr. Pavia, he was hired in May 2001 by Jack Frank, who was the owner of Around the Clock. (Compl. ¶ 12). When he first started working at Around the Clock, he generally worked six days a week, twelve hours per day. (Tr. at 6). During the period from May 2001 to May 2002, Mr. Frank paid Mr. Pavia between $350 and $380 per week. (Id. at 6–7; Compl. ¶ 13).

In May 2002, S.S. Hussain became the sole owner of Around the Clock.³ (Tr. at 6). At that time, Mr. Pavia began working on Sundays as well, working a total of twelve hours per day, six days a week, and ten hours on the seventh day, Sunday. (Id.) Mr. Pavia testified that even after he began working seven days a week, he still received the same weekly pay as when he was working six days a week. (Id. at 7). He testified that he was paid in cash and that there was no specific day on which he received his pay. (Id.) Mr. Pavia did not have bank records or other documentation with which to substantiate his testimony, and he testified that he was never provided with any records or other documentation. (Id. at 9). As defendants did not appear in the action, they did not avail themselves of the opportunity to rebut Mr. Pavia's testimony.

According to Mr. Pavia, he worked six and then seven days per week, until defendants failed to pay him for approximately three to four weeks in December 2002. (Id. at 9; Compl. ¶ 17). At that point, Mr. Pavia went to Mr. Hussain and asked to be paid what he was owed. (Id.

---

²Citations to "Tr. at " refer to pages in the transcript of proceedings before this Court on July 15, 2004. Citations to "Compl." refer to plaintiff's Complaint filed on December 29, 2003.

³Pavia testified that Hussain, whose real name is Sicandra Nartine, became the owner of Around the Clock in May 2002. (Tr. at 6, 18). Prior to this point, Pavia testified that there were three joint owners of the deli, including Mr. Frank. (Tr. at 8).

at 8; Compl. ¶ 18). According to Mr. Pavia, Hussain "threatened to kill [him]." (Tr. at 8).[4] After these threats, Mr. Pavia stopped working at the deli. Mr. Pavia's last day at the deli was in December, right before Christmas. (Id. at 8–9).

## DISCUSSION

Rule 55(a) of the Federal Rules of Civil Procedure provides: "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." Fed. R. Civ. P. 55(a). Rule 55 sets forth a two-step process in which first a default, and then a default judgment, is entered. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993). The court clerk automatically enters the default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure by noting the party's default on the clerk's record of the case. See id. After a default has been entered against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), a default judgment may be entered. See Fed. R. Civ. P. 55(b). If the amount of damages must be ascertained in order for default judgment to be entered, the court may conduct a hearing. See Fed. R. Civ. P. 55(b)(2); Enron Oil Corp. v. Diakuhara, 10 F.3d at 95. Here, plaintiff submitted a request for entry of default and default judgment on February 12, 2004. The clerk of court entered a default on April 22, 2000.

---

[4]The Complaint alleges that Mr. Pavia also spoke to a supervisor whom Mr. Pavia knew as "Nattie," who threatened to "remove Mr. Pavia's organs 'and 'and feed them to the dogs.'" (Compl. ¶ 18). Mr. Pavia was not asked about and did not mention this discussion with Nattie during the inquest proceeding.

In determining whether a default judgment should enter, courts have cautioned that a default judgment is an extreme remedy that should only be granted as a last resort. See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance the interest in expediting cases with the court's responsibility to "[afford] litigants a reasonable chance to be heard." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95–96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," defaults are "generally disfavored" and doubts should be resolved in favor of the defaulting party. Id. at 96. Accordingly, the plaintiff is not entitled to a default judgment as a matter of right, simply because the defendants are in default. See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (stating that courts are required to "supervise default judgments with extreme care to avoid miscarriages of justice," and ordering an inquest to determine damages).

The court possesses significant discretion and may consider a number of factors in deciding whether or not to grant a default judgment, including whether the grounds for default are clearly established, and the amount of money potentially involved. See Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (citations omitted). The greater the amount of money involved, the less justification there is for entering the default judgment. Id. Additionally, a court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the delay involved, and how harsh an effect a default judgment might have on the defendant. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981) (discussing

factors); Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, 10A Fed. Practice & Procedure, §§ 2685, 2688 (3d ed. 1998).

When a defendant defaults, he is deemed to have admitted every well-pleaded allegation of the complaint. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65; Wing v. East River Chinese Rest., 884 F. Supp. 663, 669 (E.D.N.Y. 1995); Deshmukh v. Cook, 630 F. Supp. 956, 959 (S.D.N.Y. 1986). Having reviewed the prior proceedings in the current case, this Court respectfully recommends that default judgment be entered. The Complaint clearly sets forth facts establishing a claim that the defendants violated various provisions of the FLSA and the New York Labor Law.

Pursuant to the FLSA, plaintiff was entitled to receive the federal minimum wage of $5.15 per hour during the period covered by this action, May 2001 to December 2002. 29 U.S.C. § 206(a)(1); see also Tran v. Alphonse Hotel Corp., 281 F.3d 23, 31 (2d Cir. 2002). Plaintiff was also entitled to receive overtime compensation at the rate of not less than one and one-half times the minimum wage for any hour worked in excess of forty hours per week. See 29 U.S.C. § 207(a)(1); 29 U.S.C. § 216; see also Tran v. Alphonse Hotel Corp., 281 F.3d at 31. The same minimum wage of $5.15 per hour and overtime rate is incorporated by reference under New York's Labor Law §§ 650 et seq. In addition, under New York Labor Law, an employer is required to pay an additional hour of pay at minimum wage for each day that the employee works for more than ten hours ("spread of hours" wages). See N.Y. Lab. Law §§ 650 et seq.; N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.4.[5]

---

[5]New York law also requires employers of manual laborers, such as plaintiff, to pay wages in a timely manner and no more than seven (7) days after the work is performed. N.Y. Lab. Law § 191(1)(a). Failure to comply with this law exposes the employer to criminal

In his Complaint, plaintiff alleges that defendants failed to pay him the minimum wage mandated by both federal and state law, and failed to pay overtime compensation and spread of hours wages, as required by state law, in violation of 29 U.S.C. §§ 206(a), 207(a)(1); N.Y. Lab. Law § 652; and N.Y. Comp. Codes R. & Regs. tit. 12, §§ 142-2.2, 142-2.4. Here, the allegations in the Complaint, coupled with plaintiff's undisputed testimony at the inquest hearing, establish the elements of a violation of the provisions of the FLSA and New York Labor Law, requiring the prompt payment of minimum wages, overtime compensation, spread of hours compensation, and liquidated damages.

Moreover, it is beyond dispute that defendants are in default. Both the corporate defendant, Around the Clock Grocery, Inc., and Mr. Hussain are in default because neither has responded to the Complaint. See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143 at *2 (holding that "[the defendant's] default is crystal clear - - it does not even oppose this motion"). Nor has the company obtained counsel. Failure to obtain counsel constitutes a failure to defend because corporations cannot proceed in federal court pro se. See Shapiro, Bernstein & Co. v. Cont'l Record Co., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam) (stating that "it is settled law that a corporation cannot appear other than by its attorney"); see also Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983) (discussing the rationale for requiring corporations, as "artificial" entities, to appear through counsel only). Further, the amount of money involved in this case is not great, unlike a case in which there are potentially millions of dollars involved. See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143 at *2 (declining to enter

---

prosecution. See People v. Vetri, 309 N.Y. 401, 406, 131 N.E.2d 568, 571 (1955). See also N.Y. Lab. Law § 195 (detailing employers' record keeping requirements).

default judgment, as plaintiff's damages request ran well into the millions of dollars, and giving defendant an opportunity to contest the default judgment).

Here, defendants have not only failed to file an answer or otherwise move with respect to the complaint, but they have also failed to respond either to plaintiff's motion for entry of a default judgment or to the Order from this Court relating to the calculation of damages. Finally, they failed to appear for the inquest and thus, the plaintiff's evidence on damages is unrefuted. Given the numerous opportunities afforded defendants and their apparent lack of interest in participating in these proceedings, there seems to be no compelling reason to delay further.

Accordingly, it is respectfully recommended that plaintiff's motion for entry of a default judgment be granted.

## DAMAGES

It is well-settled that the burden is on the plaintiff to establish its entitlement to recovery. See Clague v. Bednarski, 105 F.R.D. 552 (E.D.N.Y. 1985). "Although the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." Wing v. East River Chinese Rest., 884 F. Supp. 663, 669 (E.D.N.Y. 1995); see also Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988), aff'd, 873 F.2d 38 (2d Cir. 1989) (stating that "the court must ensure that there is a basis for the damages specified in a default judgment"). Thus, the plaintiff must still prove damages, and the defendant must have the opportunity to contest the claimed damages. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158 (stating that default does not constitute admission of damages). "'While a default judgment constitutes

an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.'" Levesque v. Kelly Communications, Inc., No. 91 CV 7045, 1993 WL 22113, at *4 (S.D.N.Y. Jan. 25, 1993) (quoting Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)); see also Deshmukh v. Cook, 630 F. Supp. at 959.

Here, having considered the plaintiff's testimony at the hearing and the affidavits and supporting exhibits submitted pertaining to damages, the Court makes the following recommendations.

1. Joint and Several Liability

Before determining the actual amount of damages to be awarded, the Court notes that there are two defendants who may be required to pay damages to the plaintiff in this action.

To be held liable under FLSA, a person must be an "employer." See, e.g., 29 U.S.C. § 206. An employer is "any person acting directly or indirectly in the interest of an employer in relation to an employee." See 29 U.S.C. § 203(d); Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999); see also N.Y. Lab. L. §§ 2(6), 651(6) (defining employers similarly under New York law). Under the "economic realities" test, one is an "employer" for the purposes of FLSA if he or she "had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Carter v. Dutchess Comm. Coll., 735 F.2d 8, 12 (2d Cir. 1984); see also Zheng v. Liberty Apparel Co. Inc., 355 F.3d 61 (2d Cir. 2003). Thus, not only supervisors, but also owners and corporate officers may be individually

liable as employers. "The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." Moon v. Kwon, 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002) (quoting Donovan v. Agnew, 712 F.2d 1509, 1511 (1st Cir. 1983)). Based on the allegations in the complaint, both the corporate defendant Around the Clock and the individual defendant Hussain meet the economic realities standard.[6] In addition, "an individual may simultaneously have several employers for purposes of FLSA." Id. Thus, defendants Around the Clock and Hussain may both be "employers" of Mr. Pavia during the same period of time, for the purposes of FLSA.

The corporate defendant Around the Clock was an employer for the full period of Mr. Pavia's employment by Around the Clock - - May 2001 to December 2002. The individual defendant Hussain was an employer for the period from December 2001 to December 2002, during which time Hussain directly supervised Mr. Pavia. (Compl. ¶ 19). Thus, Around the Clock is responsible for any liability arising from the period between May 2001 and November 2001, and both defendants are jointly and severally liable for any liability arising from the period between December 2001 and December 2002.

2. Damages Available Under the FLSA and N.Y.S. Labor Law

Under the FLSA, plaintiff is entitled to recover not only unpaid minimum wages and

---

[6]Although not sued in his individual capacity, this Court notes that Jack Frank meets the economic realities test for being an employer as well, as Mr. Frank hired Mr. Pavia, supervised his work, set his work schedule, and determined when and how much he would be paid. In his corporate capacity, however, Mr. Frank, as well as any other corporate officers, directors, and shareholders of Around the Clock are liable for Around the Clock's damages.

overtime compensation, but also an additional amount in liquidated damages, equal to the amount of the delinquency, and attorney's fees and costs. See 29 U.S.C. § 216(b) (stating that any employer who fails to pay minimum wages or overtime "shall" be liable "in an additional equal amount as liquidated damages"). Under New York Labor Law, plaintiff is entitled to receive unpaid spread of hours compensation for any days during which he worked more than ten hours per day. N.Y. Lab. Law §§ 663(1) et seq.; N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4. Plaintiff is also entitled under state law to receive liquidated damages of 25% if the employer's underpayments were willful. See N.Y. Lab. Law §§ 663(1); 198(1-a).[7]

Here, plaintiff seeks an award of $1,664.33 in minimum wages for work performed between May 1, 2001 and December 2002; $8,448.61 for unpaid overtime for the same period; $2,472.00 in unpaid spread of hours compensation; liquidated damages, interest and attorney's fees of $7,012.50. The Court recommends damages as follows.

3. Minimum Wages

Turning first to Mr. Pavia's claim for minimum wages, Mr. Pavia testified at the hearing that he worked 72 hours per week for the 52 weeks from May 2001 to May 2002, during which time he was paid between $350 and $380 per week. Mr. Pavia also testified that after May 2002, when Mr. Hussain assumed sole ownership of the deli, Mr. Pavia's hours increased to 82 hours per week, but he continued to receive the same amount of pay.

As an initial matter, Mr. Pavia's testimony as to the hours worked and rate of pay

---

[7] The state law provisions also award delinquent unpaid minimum and overtime wages, liquidated damages of 25%, attorney's fees and costs. See N.Y. Lab. Law § 663(1).

10

received is a sufficient basis for this Court to recommend an award of damages even in the absence of further documentation. Under the FLSA, employers are required to maintain accurate records establishing the hours worked by their employees. See 29 U.S.C. § 211(c); Tran v. Alphonse Hotel Corp., 281 F.3d 23, 31 (2d Cir. 2002). When the employer fails to maintain accurate records or, where as here, no records have been produced as a consequence of defendants' default, courts have held that the "'employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" Tran v. Alphonse Hotel Corp., 281 F.3d at 31 (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1940)). The Supreme Court in Anderson v. Mt. Clemens Pottery concluded that it would be reasonable and fair to award wages under such circumstances, because "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with [record keeping laws]." 328 U.S. at 688; see also Reich v. S. New Eng. Telecomm. Corp., 121 F.2d 58, 69 (2d Cir. 1997). In addition, where the employer has defaulted, the courts have held that the "plaintiff['s] recollection and estimates of hours worked are presumed to be correct." Zeng Liu v. Jen Chu Fashion Corp., No. 00 CV 4221, 2004 WL 33412, at *8 (S.D.N.Y. Jan. 7, 2004). See also Anderson v. Mt. Clemens Pottery Co., 328 U.S. at 687–88 (shifting the burden of proof); Chao v. Vidtap, 196 F. Supp. 2d 281, 293–94 (E.D.N.Y. 2002) (finding plaintiff's testimony to be sufficient to establish unpaid wages).

The employer's failure to keep records also violates New York law. Under New York Labor Law, employers are required to "furnish each employee with a statement with every

payment of wages, listing gross wages, deductions and net wages, and upon the request of an employee furnish an explanation of how such wages were computed." N.Y. Lab. Law § 195(3). See also N.Y. Lab. Law § 195(1) (requiring employers to notify employees, at the time of hiring, of the rate of pay and of the regular pay day); N.Y. Lab. Law § 195(2) (requiring employers to notify employees of any changes in the pay day prior to changing the pay day); N.Y. Lab. Law § 195(4) (requiring employers to "establish, maintain and preserve for not less than three years payroll records showing the hours worked, gross wages, deductions and net wages for each employee"); N.Y. Lab. Law § 195(5) (requiring employers to "notify . . . employees in writing or by publicly posting the employer's policy on sick leave, vacation, personal leave, holidays and hours").

Here, the evidence offered to support plaintiff's claim that he was paid less than the minimum wage is limited to plaintiff's sworn testimony. He was unable to offer records to corroborate his claims, in large part because he was paid in cash by his employer and was not provided with pay stubs or other documentation. However, because defendants have not appeared to challenge his claims, plaintiff's testimony has not been impeached, and this Court finds his testimony credible.

Thus, in computing the amount of damages owed to plaintiff as a result of defendants' failure to pay minimum wage, the Court credits Mr. Pavia's testimony that during the 52 week period from May 2001 to May 2002, he worked 72 hours per week at a pay rate of between $350 and $380 per week. Using an average wage rate of $365 per hour, Mr. Pavia was paid at the rate of $5.07 per hour for his 72 hours of work per week. Since the minimum wage during this period was $5.15 per hour up to 40 hours per week, Mr. Pavia is owed $.08 per hour for the base

12

40 hours per week for the period May 2001 to May 2002, for a total of $166.40.

The Court also credits Mr. Pavia's testimony that from May 2002, after Mr. Hussain assumed sole ownership of the deli, Mr. Pavia's hours increased to 82 hours per week, which, at the same average salary of $365 per week, resulted in an average hourly rate of pay of $4.45 per hour for his 82 hours of work per week. Thus, the difference between Mr. Pavia's actual rate of pay and the minimum wage rate for this second period was $.70 per hour. The total amount owned in unpaid minimum wage for this 26 week period is $728.00.

Finally, Mr. Pavia was not paid at all for three and one half weeks during the month of December 2002, during which time he worked a total of 206.5 hours.[8] The minimum wage portion of this work comprises 149.5 hours.[9] He is entitled to receive minimum wages of $5.15 per hour for these hours, for a total of $769.93.

Thus, it is respectfully recommended that the court order reimbursement from Around the Clock in minimum wages of $1,664.33 for the entire period, commencing May 1, 2001 through December 2002. As to Mr. Hussain, who did not become an owner until May 2002, he is jointly and severally liable for unpaid minimum wages from May 1, 2002 through December 2002 in the

---

[8]Some of the calculations submitted by plaintiff as to the hours worked are slightly confusing. (See Compl. ¶ 17; Pl.'s Memorandum of Law, filed July 23, 2004, at 4–5, Ex. B). At the inquest hearing, plaintiff's counsel acknowledged that Mr. Pavia's testimony differed slightly from the allegations in the complaint. (Tr. at 13–14). This Court gave permission for plaintiff to submit amended calculations. (Id.) The Court finds the contradictions attributable to mistakes in mathematical calculations, rather than to issues of credibility by the plaintiff. In assessing the unpaid wages for this period, the Court is using the figure supplied in Exhibit A to plaintiff's post-inquest memorandum of law filed July 23, 2004, as this Exhibit provides the most thorough detailing of hours worked and serves to explain the prior miscalculations.

[9]The 149.5 hours were computed as follows: Mr. Pavia was credited for 40 hours of work at the minimum wage for the first three weeks, equaling 120 hours. During the fourth week, Mr. Pavia worked 29.5 hours total, all of which are due at the minimum wage rate.

amount of $1,497.93.

4. Overtime Compensation

Based on Mr. Pavia's testimony,[10] he is also entitled to overtime compensation, calculated at the rate of time and a half for all hours worked over 40 hours per week. For the 52 week period from May 2001 to May 2002, Mr. Pavia testified that he worked 72 hours per week, which includes 32 hours of overtime. During this period, he was paid at the rate of only $5.07 per hour, including the hours worked in excess of 40 hours per week. Since the minimum overtime rate is $7.73,[11] Mr. Pavia is owed $2.66 per hour for each hour of overtime during the period May 2001 to May 2002, for a total of $4,426.24 in unpaid overtime.

Doing similar calculations, Mr. Pavia worked 82 hours per week during the 26 weeks from May 1, 2002 through December 1, 2002, receiving wages at the rate of $4.45 per hour, including the 42 hours per week of overtime that he worked during that period. Since he should have been paid at the rate of $7.73 for overtime, he is owed the difference of $3.28 per hour. Thus, defendants Hussain and Around the Clock owe plaintiff a total of $3,581.76 in unpaid overtime.

Mr. Pavia worked 19 hours per week of overtime for three weeks in December 2002,[12] for

---

[10] As noted above, the Court is permitted to rely on Mr. Pavia's uncontradicted testimony in determining overtime compensation where, as here, defendants have failed to maintain adequate documentation and have failed to appear.

[11] Under the FLSA and New York Labor Law, one and one half of the minimum wage rate of $5.15 per hour is $7.73.

[12] For the fourth week that he worked that month, he did not work any overtime hours. See supra note 9 and accompanying text.

14

a total of 57 hours of overtime. Since he was not paid anything for that month, he is entitled to receive $7.73 for each hour, equaling $440.61 in unpaid overtime.

In total, defendant Around the Clock owes plaintiff $8,448.61 for the period May 2001 through December 2002. Mr. Hussain is jointly and severally liable to pay plaintiff overtime in the amount of $4,022.37 for the period May 2002 through December 2002.

5. Federal Liquidated Damages

Under the FLSA, plaintiff is entitled to an award of liquidated damages equal to the amount owed in unpaid minimum wages and unpaid overtime. 29 U.S.C. § 216(b). "Liquidated damages under the FLSA are considered compensatory rather than punitive in nature." Reich v. S. New Eng. Telecomm. Corp., 121 F.3d 58, 71 (2d Cir. 1997). Such "'double damages are the norm, single damages the exception.'" Reich v. S. New Eng. Telecomm. Corp., 121 F.3d at 71 (citations omitted). Double damages are typically mandatory, and the employer bears the burden of rebutting this presumption. 29 U.S.C. § 260.

Here, the employers have defaulted and thus have presented no evidence to rebut the presumption in favor of an award of double damages. Indeed, an independent review of the evidence fails to raise any inference that the employer acted in good faith in dealing with the plaintiff in this case. "Ignorance of FLSA requirements is insufficient to establish good faith and the employer must 'take active steps to ascertain the dictates of the FLSA and then act to comply with them.'" Tlacoapa v. Carregal, 386 F. Supp. 2d 362, 368 (S.D.N.Y. 2005) (quoting Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999)). In Tlacoapa, the court found the fact that the employer paid the employee in cash and failed to compensate for overtime work

demonstrated that the employer did not act in good faith when it failed to comply with the requirements of FLSA. Id. Similarly, this Court finds that defendants in this case did not act in good faith when they failed to comply with FLSA. Thus, the Court concludes that there is no basis on which to deny liquidated damages in this case.

The Court has determined that the total owed to Mr. Pavia in unpaid minimum wages and overtime compensation by defendant Around the Clock for the period May 2001 through December 2002 is $10,112.94. Thus, the liquidated damages for this period equal $10,112.94. Mr. Hussain is jointly and severally liable to plaintiff for $5,520.30 in liquidated damages for the period May 2002 through December 2002.

6. Spread of Hours Pay and State Liquidated Damages

Under New York Labor Law, whenever an employee works more then 10 hours in a day, he is entitled to receive an additional hour of pay for every day in which he worked more than 10 hours. N.Y. Lab. Law §§ 650 et seq.; N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4.

During the period from May 2001 to May 2002, Mr. Pavia worked over 10 hours per day for six days a week. Thus, Mr. Pavia is entitled to six hours per week at the minimum wage of $5.15 an hour for 52 weeks for a total of $1,606.80. For the 26 week period from May 2002 through December 2002, when he worked over 10 hours per day for six days a week, Mr. Pavia is entitled to $803.40 in compensation. For the two week period in December 2002 when he worked over 10 hours per day for six days a week, Mr. Pavia is entitled to $30.90 per week, for a total of $61.80. Thus, in total Pavia is owed $2,472.00 in unpaid spread of hours from Around the Clock Grocery Inc., and $865.20 in unpaid spread of hours from Hussain.

16

Under New York Labor Law § 663(1), plaintiff is also entitled to receive 25% of his unpaid wages in liquidated damages if the employer's underpayments were willful. See N.Y. Lab. Law §§ 663(1); 198(1-a). Willfulness means that the employer "knowingly, deliberately, or voluntarily disregards its obligation to pay wages." Ayres v. 127 Rest. Corp., 12 F. Supp. 2d 305, 309 (S.D.N.Y. 1998) (quoting P & L Group, Inc. v. Garfinkel, 150 A.D.2d 663, 664 (2d Dep't 1989)). It is not necessary that the court find malice or bad faith. Id. at 309.

Based on the evidence presented at the hearing, this Court finds that there has been a showing that defendants acted willfully in failing to spread of hours wages in compliance with state wage and hour laws, sufficient to warrant an award of 25% in liquidated damages.[13] This amounts to $618.00 from defendant Around the Clock, of which defendant Hussain is jointly and severally liable for $216.30.

7. Interest

New York law provides for the reimbursement of interest earned on withheld wages and overtime. C.P.L.R. § 5001. Under Section 5001, interest accrues at 9% per annum computed on a simple interest basis interest from "the earliest ascertainable date the cause of action existed." C.P.L.R §§ 5001; 5004; see also Koylum, Inc. v. Peksen Realty Corp., 357 F. Supp. 2d 593, 596 (E.D.N.Y. 2005) (discussing C.P.L.R. §§ 5001, 5004); Marfia v. T.C. Ziraat Bankasi, 147 F.3d 83, 90 (2d Cir. 1998) (discussing rationale for computing sum on a simple

---

[13]In fact, the statute provides for a payment of liquidated damages of 25% of all unpaid regular wages, including spread of hours wages. As the Court has already recommended liquidated damages calculated under the FLSA for the unpaid minimum and overtime wages, Mr. Pavia is only entitled to receive 25% of his spread of hours wages under state law.

17

interest basis). Where damages were incurred at various times - - here, at weekly intervals - - the Court has discretion to choose a reasonable accrual date. Koylum, Inc. v. Peksen Realty Corp., 357 F. Supp. 2d at 597. The median date "'between the two poles represented by the earliest breach of contract and the date this action was filed'" is one that is commonly used. See, e.g., id. (quoting Panix Prod., Ltd v. Lewis, No. 01 CV 2709, 2003 WL 21659370, at *2–3 (S.D.N.Y. 2003)). Thus, this Court will compute interest from the month halfway between when plaintiff began and ceased working for defendant. Accordingly, the starting point for defendant Around the Clock is February 2002, and August 2002 for defendant Hussain.

Prior to the computation of interest, the subtotal of unpaid minimum wages, overtime compensation, spread of hours, and liquidated damages owed is $23,315.88 from defendant Around the Clock, of which defendant Hussain is jointly and severally liable for $12,122.10. The period from February 2002 to November 2005 is 3.83 years. At a rate of 9% in simple interest per annum for this period, Around the Clock owes Mr. Pavia $8,036.98 in interest. The period from August 2002 to November 2005 is 3.42 years. At 9% in simple interest per annum, Mr. Hussain is jointly and severally liable to Mr. Pavia for $3,731.18 in interest.[14]

8. Attorney's Fees

Finally, both state and federal law provide for an award of reasonable attorney's fees if plaintiff prevails on a claim for unpaid wages. 29 U.S.C. § 216(b); N.Y. Lab. Law § 198 (1-2); Local Civil Rule 55.2(b). In this case, counsel has submitted an affidavit, along with

---

[14]These calculations assume that defendants make prompt payment upon the issuance of this opinion. Failure to pay promptly will, of course, cause interest to continue to accrue.

contemporaneous time records showing the date, the time spent, and the services performed in pursuing plaintiff's claims, as required by New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983).

Having reviewed the declaration of Andrew Elmon, Esq., and the contemporaneously prepared time records, the Court finds that the amount requested in attorney's fees of $7,012.50 is reasonable and should be awarded to plaintiff.

## CONCLUSION

Accordingly, it is respectfully recommended that plaintiff be awarded the following amounts:

|  | Around the Clock | Hussain |
|---|---|---|
| Minimum Wages | $ 1,664.33 | $ 1,497.93 |
| Overtime | $ 8,448.61 | $ 4,022.37 |
| Fed. Liquidated Damages on Minimum Wages and Overtime | $10,112.94 | $ 5,520.30 |
| Spread of Hours | $ 2,472.00 | $ 865.20 |
| State Liq. Damages on Spread of Hours | $ 618.00 | $ 216.30 |
| Interest | $ 8,036.98 | $ 3,731.18 |
| Attorney's Fees | $ 7,012.50 | $ 7,012.50 |
| **TOTAL** | **$38,365.36** | **$22,865.78** |

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; <u>Small v. Sec'y of Health and Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989).

**SO ORDERED.**

Dated: Brooklyn, New York
November 15, 2005

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge